UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOP IRONWORKERS LOCAL 790 PENSION PLAN, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>RUSSELL S. ZAPPETINI, et al.,<br><br>　　　　　Defendants. | Case No. 15-cv-01038-VC<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT DAVID J. ZAPPETINI**<br><br>Re: Dkt. No. 36 |

　　　　Plaintiffs Shop Ironworkers Local 790 Pension Plan and its Trustee, Michael Newington (collectively, "the Plan") have sued Russell S. Zappetini and David J. Zappetini under the Employee Retirement Income Security Act of 1974 and the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001-1461, arguing that the Zappetinis are jointly and severally liable for the unpaid withdrawal liability of non-party Steve Zappetini & Sons, Inc. ("SZSI"), an employer that used to contribute to the Plan.  The Plan seeks an award of the withdrawal liability assessed against SZSI plus interest, liquidated damages, attorneys' fees, and costs.  The Court has granted the Plan's motion for default judgment against Russell Zappetini.  The Plan now moves for summary judgment against David Zappetini, as an individual and as trustee of the 2007 Zappetini Trust.  Having considered the Plan's brief and accompanying submissions, and David Zappetini's declaration in opposition to the motion, though it was untimely filed, as well as the parties' oral arguments at the hearing on the motion for summary judgment, the motion is granted.

**I.**

　　　　There is no genuine dispute about the following material facts: The Plan is a

multiemployer plan as defined by ERISA, 29 U.S.C. § 1002(37)(A).  SZSI was an employer with an obligation to contribute to the Plan under a Collective Bargaining Agreement with the Shop Ironworkers Local Union 790.  SZSI withdrew from participation in the plan on July 1, 2013.  The Plan thereafter assessed withdrawal liability against SZSI under 29 U.S.C. §§ 1383(a) and 1391(b)(2)(A) in the amount of $351,630.00.  Around that same time, SZSI filed for Chapter 11 bankruptcy.

At the time SZSI withdrew from participation in the Plan, David and Russell Zappetini collectively owned 100% of the outstanding voting shares of the corporation (50% each).  From at least 2003 until its withdrawal in July 2013, SZSI operated exclusively out of a facility located at 1112 Second Street in San Rafael, California ("the Second Street Facility").  At the time SZSI withdrew from participation in the plan, the 2007 Zappetini Trust (a revocable inter vivos trust created by grantors and spouses David and Carolyn Zappetini) co-owned the Second Street Facility in equal shares with Russell Zappetini.  SZSI did not formally lease the Second Street Facility, but made payments for the Second Street Facility's mortgage, real property taxes, insurance, and utilities services, and made repairs and improvements to the property, and did not pay additional rent for the use of the Facility.

On July 2, 2014, the Plan notified David and Russell Zappetini of SZSI's withdrawal liability and asserted that they were jointly and severally liable as operators of a business under common control with SZSI.[1]  Specifically, the Plan asserted that the Zappetinis owned and operated an unincorporated leasing business in common control with SZSI by leasing the Second Street Facility to SZSI, which they also owned and operated, such that SZSI and the unincorporated leasing business should be treated as a single employer under ERISA, 29 U.S.C. § 1301(b)(1).  The Plan informed the Zappetinis that the first quarterly withdrawal payment was

---

[1] David Zappetini states in his declaration in opposition to the Plan's motion for summary judgment that he has "no recollection" of receiving this notice.  Even liberally construing this filing, as the Court must, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Zappetini's lack of memory is insufficient to create a genuine dispute of material fact as to whether he did receive the notice.  *See Fed. Election Comm'n. v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002).

2

due on August 1, 2014. The Zappetinis did not make either the first or second quarterly withdrawal payments. On November 5, 2014, the Plan's attorneys wrote to the Zappetinis demanding the past-due quarterly payments, and explaining that if they did not cure the delinquency within 60 days, the Plan would demand the entire amount of withdrawal liability plus interest, pursuant to 29 U.S.C. § 1399(c)(5). The Zappetinis did not cure the delinquency and have made no withdrawal liability payments to date.

## II.

"The MPPAA amendments to ERISA make employers liable for unfunded vested benefits if they withdraw from a multiemployer plan." *Resilient Floor Covering Pension Tr. Fund Bd. of Trs. v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1089 (9th Cir. 2015) (citing 29 U.S.C. §§ 1381, 1391). ERISA withdrawal liability "may be imposed against an entity other than the one obligated to contribute to the pension plan so long as (1) the entity is under 'common control' with the withdrawing entity; and (2) the entity is a 'trade or business.'" *Bd. of Trs. of the Ken Lusby Clerks & Lumber Handlers Pension Fund v. Piedmont Lumber & Mill Co.*, 132 F. Supp. 3d 1175, 2015 WL 5461561 at *2 (N.D. Cal. 2015) (citing 29 U.S.C. § 1301(b)(1)); *see also Bd. of Trs. of W. Conference of Teamsters Pension Tr. Fund v. Lafrenz*, 837 F.2d 892, 893 (9th Cir. 1988) ("[T]rades and businesses operated under common control are considered a single entity and thus are jointly and severally liable for each other's withdrawal liability." (citing 29 U.S.C. § 1301(b)(1))). Congress extended withdrawal liability under section 1301(b)(1) to trades or businesses under common control to prevent employers "from shirking their ERISA obligations by fractionalizing operations into many separate entities." *Teamsters Pension Tr. Fund–Bd. of Trs. of W. Conference v. Allyn Transp. Co.*, 832 F.2d 502, 507 (9th Cir. 1987).

By regulation, "trades or businesses under common control" include

> two or more organizations conducting trades or businesses if (i) the same five or fewer persons who are individuals, estates, or trusts own . . . a controlling interest in each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization.

26 C.F.R. § 1.414(c)-2(c); *see also* 29 U.S.C. § 1301(b)(1). A controlling interest in a corporation is defined as "ownership of stock possessing at least 80 percent of total combined voting power of all classes of stock entitled to vote of such corporation or at least 80 percent of the total value of shares of all classes of stock of such corporation." *Id.* § 1.414(c)-2(b)(2)(A). A controlling interest in a sole proprietorship is defined as "ownership of such sole proprietorship." *Id.* § 1.414(c)-2(b)(2)(D). People are "in effective control" of a corporation if they "own stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of such corporation." *Id.* § 1.414(c)-2(c)(2)(i). People are "in effective control" of a sole proprietorship if they own the sole proprietorship. *Id.* § 1.414(c)-2(c)(2)(iv).

The Ninth Circuit has recognized that neither ERISA nor the applicable regulations clearly define what is and what is not a "trade or business." *Lafrenz*, 837 F.2d at 894 n.6. However, numerous courts have found that an entity that leases property to a withdrawing employer is categorically a "trade or business" within the meaning of section 1301(b)(1). *See Piedmont Lumber & Mill Co.*, 2015 WL 5461561 at *5 (listing cases). An entity need not be incorporated to be a trade or business under common control. 29 U.S.C. § 1301(b)(1).

Courts in this district have held that it is proper to determine whether an entity is a trade or business under common control within the meaning of 29 U.S.C. § 1301(b)(1) at summary judgment, where the facts are undisputed. *Piedmont Lumber & Mill Co.*, 2015 WL 5461561 at *2 (quoting *Pension Tr. Fund for Operating Eng'rs v. Tractor Equip. Sales*, No. 12–cv–01056–WHO, 2014 WL 5810097, at *3 (N.D.Cal. Nov. 7, 2014)). In such a case, the question is whether, considering those undisputed facts, the entity in question is a trade or business under common control under the statute and applicable regulations. *Id.*

### A.

Here, the Plan has produced numerous documents and deposition testimony demonstrating that David and Russell Zappetini collectively owned 100% of the voting shares of SZSI. The Zappetinis therefore had a controlling interest in SZSI and were also in effective

4

control of SZSI.  26 C.F.R. § 1.414(c)-2(b)(2)(A), *id.* §§ 1.414(c)-2(c), 1.414(c)-2(c)(2)(i).

Likewise, the Plan has produced numerous documents and deposition testimony demonstrating that Russell Zappetini and the 2007 Zappetini Trust were the sole owners of the Second Street Facility.  Applying the regulations for attribution of ownership to spouses and grantors of revocable inter vivos trusts to the undisputed facts of this case, David Zappetini is a constructive owner of the Second Street Facility.  David Zappetini and his spouse Carolyn Zappetini are the sole grantors and beneficiaries of the inter vivos revocable 2007 Zappetini Trust.  The trust's ownership interest in the Second Street Facility is attributed to its grantors, David and Carolyn Zappetini, because it is an inter vivos revocable trust.  *See* 26 C.F.R. § 1.414(c)–4(b)(3)(iii); 26 U.S.C. § 676(a).  And Carolyn's interest in the trust is also attributed to David, because of their marriage.  *See* 26 C.F.R. § 1.414(c)–4(b)(5)(i).  Because Russell was an owner and David was a constructive owner of the Second Street Facility at the time of SZSI's withdrawal from the Plan, Russell and David Zappetini each had a controlling interest in and was in effective control of the Second Street Facility.  *Id.* §§ 1.414(c)-2(b)(2)(D), 1.414(c)-2(c)(2)(iv).

SZSI and the Second Street Facility were therefore under the Zappetinis' common control.  Accordingly, the Second Street Facility and its owners are liable for SZSI's withdrawal liability if the Second Street Facility was a "trade or business" within the meaning of section 1301(b)(1).  *See, e.g.*, *Piedmont Lumber & Mill Co.*, 2015 WL 5461561 at *2.  The undisputed facts of this case indicate that the Second Street Facility was such a trade or business.

The Second Street Facility leased property to SZSI.  Although there was no formal, written lease agreement between the two entities, David Zappetini admitted in his deposition that SZSI was the sole tenant of the Second Street Facility for years, and that SZSI in that time made repairs and improvements to the Second Street Facility, as well as making mortgage, property tax, and insurance payments for the Facility.  Because SZSI did not pay any additional rent for the use of the Facility, this arrangement was of significant economic benefit to SZSI.  The arrangement also benefitted the Second Street Facility, in that the Second Street Facility received

valuable repairs and improvements as well as payments for mortgage, taxes, and insurance in exchange for the corporation's use of its property. Because the Second Street Facility engaged in economic activity – namely, by leasing property to the withdrawing employer, SZSI – that categorically constitutes a trade or business within the meaning of section 1301(b)(1), the Second Street Facility and its owners are jointly and severally liable for SZSI's withdrawal liability. *See, e.g.*, *Piedmont Lumber & Mill Co.*, 2015 WL 5461561 at *5-6; *see also Bd. of Trs., Sheet Metal Workers' Nat. Pension Fund v. Delaware Valley Sign Corp.*, 945 F. Supp. 2d 649, 654 (E.D. Va. 2013) ("[W]here . . . an individual leases property that he owns to the withdrawing employer that he also owns, the individual's leasing activity is a 'trade or business' under common control, and accordingly, that individual is jointly and severally liable for the withdrawing employer's withdrawal liability.").

There is also no genuine dispute that David Zappetini has forfeited the right to contest the existence or amount of SZSI's withdrawal liability by failing timely to request review of the withdrawal liability assessment or initiate arbitration. *See* 29 U.S.C. § 1399(b)(2)(A); 29 U.S.C. § 1401(a)(1)(A); *see also Delaware Valley Sign Corp.*, 945 F. Supp. 2d at 657. In any event, David Zappetini does not now contest the existence or amount of withdrawal liability in his late-filed declaration in opposition to the motion for summary judgment; although he says he does not know "whether [the Plan's] calculations are accurate," he offers no evidence suggesting the Plan's assessment was incorrect. Even if he had not forfeited the right to contest the existence or amount of withdrawal liability, then, there would be no genuine dispute as to this issue. *See Fed. Election Comm'n. v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002).

Accordingly, David Zappetini is jointly and severally liable with Russell Zappetini for the assessed amount of withdrawal liability, $351,630.00.

**B.**

In addition to a judgment that David Zappetini is jointly and severally liable for the assessed amount of withdrawal liability, the Plan seeks an award of liquidated damages, interest, attorneys' fees, and costs. The Plan is statutorily entitled to such awards: ERISA provides in

action brought by a Plan to collect unpaid contributions (including unpaid withdrawal liability) where judgment is awarded in favor of the Plan,

> the court shall award the plan—
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
> >  (i) interest on the unpaid contributions, or
> >  (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); *see also id.* § 1451(b).

Section 1132(g)(2) explains that interest on the unpaid liability is to be awarded "at the rate provided under the plan." The Plan's Withdrawal Liability Procedures prescribe a simple interest rate of 10% per annum. Accordingly, the Court awards the Plan $61,848.34 for the period of August 1, 2014, to May 4, 2016, and interest at the prescribed rate of 10% per annum or $96.33 per day from that date until paid.

The Court awards liquidated damages of $70,326.00, which is 20% of the unpaid withdrawal liability, because that amount is greater than the amount of accrued interest as of May 4, 2016 (i.e. $61,848.34). *See* § 1132(g)(2)(C).

The Court is also required to award reasonable attorney's fees. *See id.* § 1132(g)(2)(D); *Allyn Transp. Co.*, 832 F.2d at 507 (citing *Woodward Sand Co. v. W. Conference of Teamsters Pension Tr. Fund*, 789 F.2d 691, 697-98 (9th Cir. 1986))). The Court finds that the Plan's attorneys' hours and rates are reasonable, and accordingly awards the Plan attorneys' fees in the amount of $59,988.75 for fees incurred from March 12, 2014, through March 7, 2016, and $11,846.00 for fees incurred from March 8, 2016, to April 19, 2016 against both defendants jointly and severally. Because the attorneys' fees incurred by the Plan between April 20 and April 21, 2016 are attributable only to the conduct of David Zappetini in frivolously and

belatedly opposing the motion for summary judgment, the Court awards attorneys' fees in the amount of $1,060.50 for that period against David Zappetini only.

The Court also awards costs to the Plan in the amount of $3,890.32.

**IT IS SO ORDERED.**

Dated: May 4, 2016

_____
VINCE CHHABRIA
United States District Judge